**Not For Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRACEY M.S., | |
| Petitioner, | Civil Action No. 20-5146 (ES) |
| v. | OPINION |
| THOMAS DECKER, *et al.*, | |
| Respondents. | |

**SALAS, DISTRICT JUDGE**

Before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by petitioner Tracey M.S.[1] ("Petitioner"). (D.E. No. 1 ("Petition" or "Pet.")). Also before the Court is Petitioner's motion for a temporary restraining order requesting immediate release from immigration detention and a bond hearing based on the current COVID-19 pandemic. (D.E. No. 7 ("Motion"); *see also* D.E. No. 8). The Court has reviewed the parties' submissions and decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons that follow, the Petition and Motion are GRANTED-IN-PART with respect to Petitioner's request for a bond hearing, and the Court will reserve on Petitioner's request for immediate release or a temporary restraining order requiring the same.

---

[1] This Opinion identifies Petitioner by her first name and the first initials of her surname in light of certain privacy concerns associated with § 2241 immigration cases. This manner of identification comports with the Judicial Conference of the United States' Committee on Court Administration and Case Management's recommendations.

## I. Background

### A. Petitioner's Immigration Proceedings

Petitioner is a native and citizen of Trinidad and Tobago who has been a lawful permanent resident in the United States for at least three decades. (Pet. ¶¶ 42 & 48; D.E. No. 16 ("Opp. Br." at 8, Ex. 6 ("Notice to Appear") at 3). Since June 21, 2019, Petitioner has been in the custody of U.S. Immigration and Customs Enforcement ("ICE") at the Hudson County Correctional Center ("HCCC") in Hudson County, New Jersey, pending completion of her removal proceedings. (Notice to Appear; Pet. ¶¶ 1 & 42; Opp. Br. at 8). In August 2018, Petitioner pled guilty to money laundering and mail theft pursuant to 18 U.S.C. § 1956(a)(1) and 18 U.S.C. § 1708. (Pet. ¶ 46; Opp. Br. at 8, Ex. 7 ("Judgment") at 1). She was sentenced to 364 days' imprisonment. (Judgment at 2; Pet. ¶ 46; Opp. Br. at 8).

After serving her sentence, Petitioner applied for a withholding of removal and relief under the United Nations Convention Against Torture ("CAT") based on her alleged fear of persecution and/or torture upon removal to Trinidad and Tobago. (Pet. ¶ 48; *see* Opp. Br. at 8). The Immigration Judge ("IJ") denied Petitioner's application and ordered her removal on September 25, 2019. (Pet. ¶ 48; *see* Opp. Br. at 8). Petitioner appealed the IJ's decision and order of removal to the Board of Immigration Appeals ("BIA"). (Pet. ¶ 49; Opp. Br. at 8, Ex. 8 ("BIA Decision")). Subsequently, on March 26, 2020, the BIA remanded Petitioner's case because it found that the IJ engaged in insufficient factfinding. (BIA Decision at 2 (ECF Pagination); Pet. ¶ 49; Opp. Br. at 8).

### B. Petitioner's Present Claims

Petitioner filed the instant Petition for a writ of habeas corpus challenging her immigration detention under 28 U.S.C. § 2241 on April 27, 2020, in light of the COVID-19 pandemic, the

current conditions at HCCC, and Petitioner's underlying medical conditions. (*See generally* Pet.). On the same day Petitioner filed the Petition, she also filed a motion for a temporary restraining order (*see* Motion) and a brief in support of both the Petition and Motion (D.E. No. 8 ("Moving Brief" or "Mov. Br.")). Petitioner requests the following alternative forms of relief in her Moving Brief: (i) immediate release; (ii) a temporary restraining order requiring immediate release; or (iii) "a constitutionally sufficient bond hearing." (Mov. Br. at 40; *see also* Pet. at 23–24).

The Petition raises substantive and procedural due process claims under the Fifth and Fourteenth Amendments. (Pet. ¶¶ 59–60). Petitioner seeks immediate release from ICE custody under two substantive due process challenges. First, she asserts that Respondents are deliberately indifferent to Petitioner's medical needs by (i) failing to provide adequate safety measures to prevent the spread of the virus, and (ii) failing to provide her with adequate care in light of her underlying medical conditions. (Mov. Br. at 22–27). Second, Petitioner contends that Respondents' failure to adequately protect the Petitioner from the allegedly punitive conditions of her confinement amounts to unconstitutional punishment. (*Id.* at 18–22). Petitioner also raises a procedural due process challenge, claiming that her continued detention is unreasonably prolonged and unconstitutional. (Pet. ¶¶ 61–62). For this reason, Petitioner claims that she is entitled to a bond hearing. (*See id.*; *id.* at 23–24).

In accordance with the Court's April 28, 2020 Order (*see* D.E. No. 11), Petitioner filed a personal declaration that comports with Local Civil Rule 7.2(a), which requires all "statements of fact [be] within the personal knowledge of the signatory." (D.E. No. 12-1 ("Petitioner Decl.")). Pursuant to the Court's subsequent Order, Respondents filed an opposition to the Petition and Motion on May 5, 2020 (*see generally* Opp. Br.), and Petitioner filed a reply on May 6, 2020 (D.E. No. 19 ("Reply Br.")). The Respondents do not contest that Petitioner's medical records reflect

that she has hypertension, anemia, and obesity.[2] (Opp. Br. at 8 & 16; Pet. ¶¶ 6 & 42; Mov. Br. at 3).

  **C.**  **COVID-19**

COVID-19, or the novel coronavirus disease 2019, "is an infectious disease caused by a newly discovered coronavirus."[3] *Coronavirus Overview*, World Health Organization, https://www.who.int/health-topics/coronavirus#tab=tab_1. (last visited May 11, 2020) (hereinafter "*Coronavirus Overview*"). The World Health Organization reports that COVID-19 "is spreading very easily and sustainably between people." *How COVID-19 Spreads*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html. (last visited May 11, 2020). The person-to-person spread of COVID-19 can occur (i) between individuals who are in close contact, meaning within about six feet, and (ii) by an infected individual's respiratory droplets produced from sneezing, coughing, or talking. *Id.* The virus can also be spread by infected but asymptomatic individuals. *Id.* However, "[m]ost people infected with the COVID-19 virus will experience mild to moderate respiratory illness and recover without requiring special treatment." *Coronavirus Overview*.

Although COVID-19 symptoms can be mild, the Centers for Disease Control and Prevention ("CDC") identified certain groups of individuals who might have a higher risk for developing severe illness from COVID-19, including: (i) individuals 65 years and older as well as nursing home/long-term care facility populations; (ii) individuals with underlying medical

---

[2]  In reply to the Respondents' opposition, Petitioner alleges that she has untreated diabetes based on a third-party physician's review of Petitioner's medical records. (Reply Br. at 5 n.3, Ex. 1 ("Supp. Decl. of Dr. Greifinger")). The physician concluded that "[Petitioner's] records also show that she has diabetes," based on her "November 2019 and March 2020 lab results show[ing] elevated blood glucose . . . and ketones in her urine. This is evidence of diabetes." (Supp. Decl. of Dr. Greifinger ¶ 5) (internal citation omitted).

[3]  On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic. *See* William Wan, *WHO declares a pandemic of coronavirus disease covid-19*, Washington Post (Mar. 11, 2020, 3:45 PM), https://www.washingtonpost.com/health/2020/03/11/who-declares-pandemic-coronavirus-disease-covid-19/.

conditions such as "chronic lung disease or moderate to severe asthma," "serious heart conditions," severe obesity, diabetes, "chronic kidney disease undergoing dialysis," and liver disease; and (iii) individuals who are immunocompromised from "cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications." *See People Who Are at Higher Risk for Severe Illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. (last visited May 11, 2020) (hereinafter "*People Who Are at Higher Risk for Severe Illness*").

It is difficult to overstate the severity of the COVID-19 outbreak and the global crisis that society is facing in light of this unprecedented public health crisis. As of May 10, 2020, in New Jersey alone, there have been 138,532 positive COVID-19 cases and 9,255 COVID-19 related deaths. *COVID-19 Information Hub*, State of New Jersey, https://covid19.nj.gov/. (last visited May 11, 2020). Hudson County, the locality of HCCC, has 16,822 cases and 969 deaths. *Id.* Certainly, it is well documented and undisputed that COVID-19 has taken the lives of many and presents an enormous risk to us all, including those in jails and detention centers. *See Thakker v. Doll*, No. 20-480, 2020 WL 1671563, at *4 (M.D. Pa. Mar. 31, 2020). The seriousness of the outbreak is extensively detailed in the Petitioner's submissions and is undisputed by the Respondents. (Opp. Br. at 1). In this context and in the wake of COVID-19, the Court considers Petitioner's habeas corpus Petition and Motion with the utmost gravity.

## II.     Jurisdiction

Under 28 U.S.C. § 2241(c), habeas relief "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements

are satisfied: (i) the petitioner is "in custody," and (ii) the custody is alleged to be "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

The Court has subject matter jurisdiction over this Petition under § 2241, because Petitioner (i) was detained within its jurisdiction, by a custodian within its jurisdiction, at the time she filed her Petition, *see Spencer v. Lemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494–95, 500 (1973); and (ii) asserts that her detention is not constitutionally or statutorily authorized, *see Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469 (3d Cir. 2015); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011).[4]

## III.   Legal Standards

Federal law sets forth the authority of the Attorney General to detain aliens in removal proceedings. Title 8 U.S.C. § 1226 governs the pre-removal-order detention of an alien. Section 1226(a) authorizes the Attorney General to arrest and to detain or release, an alien, pending a decision on whether the alien is to be removed from the United States, except as provided in subsection (c). Section 1226(a) provides, in relevant part:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General-
>
> > (1) may continue to detain the arrested alien; and
> >
> > (2) may release the alien on-

---

[4] The Court's jurisdictional assessment is limited to Petitioner's request for a bond hearing, which, as discussed further below, is granted. In light of the Court's determination that Petitioner be afforded an individualized bond hearing, the Court will reserve a determination on Petitioner's substantive due process claims until after the bond hearing takes place, as it may moot Petitioner's remaining claims. Thus, the jurisdictional assessment does not extend to Petitioner's claims seeking immediate release.

>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
>> (B) conditional parole; . . .

Certain criminal aliens, however, are subject to mandatory detention pending the outcome of removal proceedings, pursuant to 8 U.S.C. § 1226(c)(1), which provides in relevant part:

> The Attorney General shall take into custody any alien who—
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in Section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

Here, both parties agree that Petitioner is detained pursuant to § 1226(c) because of her underlying federal conviction for money laundering and mail theft. (Pet. ¶ 51; Mov. Br. at 38; Opp. Br. at 12).

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court determined that § 1226(c) was facially constitutional as "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 531. In reaching this conclusion, the Court noted that, in most cases, detention under the statute lasted only a month and a half, and that even in cases where an appeal was taken to the BIA, detention pursuant to § 1226(c) lasted an average of four months, indicating that detention under the statute was often brief and had a defined beginning and end point at the conclusion of removal proceedings. *Id.* at 529. Because the Court found the statute constitutional, it rejected Petitioner's challenge even though Petitioner had spent a period of approximately six

months in detention. *Id.* at 530. Thus, after *Demore*, detention for less than six months was insufficient to support an as-applied challenge to detention under the statute.

The Third Circuit considered whether a petitioner was entitled to a bond hearing nearly three years into his detention under § 1226(c) in *Diop*. 656 F.3d at 223–26. The Third Circuit held that "when detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *Id.* at 233. The Third Circuit emphasized that *Demore* relied on the fact that "mandatory detention pursuant to § 1226(c) lasts only for a 'very limited time' in the vast majority of cases," and, therefore, the result in *Demore* "may well have been different" if the petitioner's detention had been "significantly longer than the average." *Diop*, 656 F.3d at 233–34 (quoting *Demore*, 538 U.S. at 529 & n.12). The Third Circuit thus interpreted § 1226(c) to "contain[ ] an implicit limitation of reasonableness: the statute authorizes only mandatory detention that is reasonable in length." *Id.* at 235. Beyond that point—which can be determined only by a "fact-dependent inquiry," *id.* at 233—the statute "yields to the constitutional requirement that there be a further, individualized inquiry into whether continued detention is necessary to carry out the statute's purpose," *id.* at 235.

In *Chavez–Alvarez*, the Third Circuit again determined that § 1226(c) should be read to contain an implicit reasonableness limitation, and that detention beyond the point of reasonableness absent a bond hearing would be unconstitutional. 783 F.3d at 475. The Third Circuit further held that, absent bad faith on the part of Petitioner, "beginning sometime after the six-month timeframe considered by *Demore* and certainly by the time [the petitioner] had been detained for one year, the burdens to [the petitioner's] liberties [will outweigh] any justification for using presumptions to detain him without bond to further the goals of the statute." *Id.* at 478.

As in *Diop*, the Third Circuit again emphasized the "use of a balancing framework [that] makes any determination on reasonableness highly fact-specific." *Id.* at 474.

In *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), the Supreme Court reversed the Ninth Circuit's holding that § 1226(c) did not authorize prolonged detention without a bond hearing. Applying the canon of constitutional avoidance, the Ninth Circuit had construed § 1226(c) to require an *automatic* bond hearing before the immigration judge after six months of detention. *See Rodriguez v. Robbins*, 804 F.3d 1060, 1078–85 (9th Cir. 2015). The Court rejected the lower court's "implausible construction" and remanded for the Ninth Circuit to decide in the first instance whether due process requires a bond hearing, with the burden on the government when detention becomes prolonged. *Id.* at 842–47, 851. As such, the Court in *Jennings* expressly declined to consider the issue of whether unreasonably prolonged or indefinite detention under § 1226(c) comports with constitutional due process requirements. *See Lopez v. Sessions*, No. 18-4189, 2018 WL 2932726, at *13 (S.D.N.Y. June 12, 2018) ("The Court did not reach the merits of the constitutional challenge before it, instead holding that there was no statutorily-guaranteed right to 'periodic bond hearings' under Sections 1225(b) and 1226(c)."). Post-*Jennings*, a petitioner may still bring an as-applied challenge to his prolonged detention. *See Dryden v. Green*, 321 F.Supp.3d 496, 501 (D.N.J. 2018) (finding that as-applied challenges remain viable post-*Jennings*).

In sum, *Jennings* abrogated the Third Circuit's holdings in *Diop* and *Chavez-Alvarez* to the extent those decisions rely on constitutional avoidance and read an implicit limitation of reasonableness into § 1226(c). Although the Third Circuit has not yet provided explicit guidance to lower courts regarding post-*Jennings* challenges to prolonged detention under § 1226(c), it stated in dicta that "*Jennings* did not call into question our constitutional holding in *Diop* that

detention under § 1226(c) may violate due process if unreasonably long." *Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018) (finding that the reasonableness inquiries it performed in *Diop* and *Chavez-Alvarez* are inappropriate in the context of § 1226(a)). Courts in this district have found that "the post-*Jennings* as-applied analysis, as it turns out, is very similar, and perhaps identical, to the former analysis under *Diop*." *See Glennis H. v. Rodriguez*, No. 18-16439, 2019 WL 2866069, at *2 (D.N.J. July 2, 2019) ("Whether detention under § 1226(c) is constitutional continues to be a function of the length of the detention, whereby the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues. Thus, at some point, detention under § 1226(c), in an individual case, may become so unreasonable as to amount to an arbitrary deprivation of liberty in violation of the Due Process Clause") (internal citations and quotation marks omitted).

Although "aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would otherwise not get under the statute," *Chavez-Alvarez*, 783 F.3d at 476, where an alien's detention becomes unreasonably prolonged merely because he has pursued valid challenges to his removal, his detention may eventually become so arbitrary that the Due Process Clause requires a bond hearing. *See K.A. v. Green*, No. 18-3436, 2018 WL 3742631, at * 4 (D.N.J. Aug. 7, 2018) (detention of nineteen months in the absence of bad faith on Petitioner's part warranted a bond hearing where Petitioner was pursuing a valid petition for review before the Third Circuit and had received a stay of removal).

## IV.   Discussion

Here, Petitioner has been detained for almost 11 months and argues that her continued detention under § 1226(c) without a bond hearing violates her procedural due process rights. (Pet. ¶¶ 61–62; Mov. Br. at 38–40). Respondents acknowledge that Petitioner may still make an as-

applied challenge to her prolonged detention. (Opp. Br. at 12). Moreover, Respondents "recognize[] that Petitioner has been detained for over ten months, and that detentions of similar length have warranted relief in the form of a bond hearing before an immigration judge." (*Id.* at 13). However, Respondents oppose, without detailed explanation, Petitioner's request for a bond hearing. (*Id.*). Respondents only note that Petitioner "sought at least two adjournments or extensions" during her removal proceedings. (*Id.*). Petitioner concedes that her two requests for adjournment amounted to roughly one month for trial preparations. (Reply Br. at 3 (citing D.E. No. 1-8, Ex. 8 to Mov. Br., Supplemental Declaration of Gustavo Gutierrez ¶¶ 6–7)).

As a general matter, courts in this district have found detention for a year, or just over a year, insufficient to support an as-applied challenge to a § 1226(c) detention post-*Jennings*. *See*, *e.g.*, *Charles A. v. Green*, No. 18-1158, 2018 WL 3360765, at *5 (D.N.J. July 10, 2018). Slightly longer periods of detention without a bond hearing, however, have been found to violate due process. *See Oscar B. v. Warden*, *Essex Cty. Corr. Facility*, No. 18-11524, 2019 WL 1569822, at *3 (D.N.J. Apr. 10, 2019) (16 months); *Thomas C. A. v. Green*, No. 18-1004, 2018 WL 4110941, at *5–6 (D.N.J. Aug. 29, 2018) (15 months); *see also Felix S. v. Decker*, No. 20-1414, 2020 WL 1527982 (D.N.J. Mar. 31, 2020) (granting bond hearing for 13 month § 1226(c) detention); *Malcolm A. H. v. Green*, 403 F. Supp. 3d 398, 402 (D.N.J. 2019) (14 months); *but see Selvin M. R. v. Green*, 2019 WL 981651, at *3 (D.N.J. Feb. 27, 2019) (finding that detention for fourteen months, which was largely the result of petitioner's own requests for continuances or other delays in his proceedings, did not justify habeas relief).

In addition, this district recently reviewed a request for a bond hearing in light of allegedly prolonged detention under § 1225(b)—which, as noted by other courts, arguably affords detainees *less* due process than § 1226(c)—where a petitioner was detained for 11 months. *See Frank B. v.*

*Green*, No. 19-346, 2020 WL 1673026, at *3–4 (D.N.J. Apr. 6, 2020).  In *Frank B.*, the Court granted petitioner's request for a bond hearing within seven days, and placed emphasis on the fact that there were no allegations that "[p]etitioner [] oppos[ed] his removal in bad faith or [] tr[ied] to game the system" which are two factors that would weigh against the request for a bond hearing. *Id.*  Similarly in *Amadu K. v. Anderson*, the Court granted the petitioner, who was detained for one year and four days under § 1226(c), a bond hearing because it found no allegations or evidence of bad faith in the underlying removal proceedings, and, significantly, petitioner's immigration case had been recently remanded to the immigration court by the BIA.  *Amadu K. v. Anderson*, No. 20-3220, 2020 WL 1864583, at *1, 4 (D.N.J. Apr. 14, 2020); *see also Saquib K. v. Tsoukaris*, No. 20-3849, 2020 WL 2111028, at *3 (D.N.J. May 4, 2020).

The Court has undertaken the fact-sensitive inquiry as delineated in *Diop* and *Chavez-Alvarez* and finds that Petitioner's detention has become unreasonably prolonged such that due process requires that Petitioner be afforded an individualized bond hearing before an immigration judge.  At the outset, the Court makes clear that its finding is particularized to the specific facts of this Petitioner's case, and that length alone is not a dispositive factor of the analysis.

Here, Petitioner is currently detained under the circumstances presented by COVID-19, which has affected the inmate/detainee population and staff at HCCC.[5]  (Opp. Br. at 7, Ex. 5, Fifth Amended Declaration of Director Ron Edwards ("Edwards Decl.") ¶ 20 (stating that as of May 4, 2020, HCCC had 13 ICE detainees, 27 inmates, and 94 staff members who tested positive for COVID-19)).[6]  In addition, Respondents do not contest that Petitioner has a documented medical

---

[5] To be clear, while COVID-19 is one factor of the Court's analysis, it notes that the threat posed by COVID-19 to inmate/detainee populations is insufficient, standing alone, to afford a bond hearing.  *See United States v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (stating, in the context of a request for compassionate release under the First Step Act, that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release").

[6] Of the 94 staff members that tested positive, 81 have recovered, and of the 40 inmates/detainees who tested

history of hypertension, anemia, and obesity. (Opp. Br. at 8 & 16; Pet. ¶¶ 6 & 44; Mov. Br. at 3). And, while the Court declines to make its own assessment of whether Petitioner faces an increased risk of contracting COVID-19 or developing severe symptoms should she contract the virus, the CDC's list of those who are at higher risk of severe illness include those with "*serious* heart conditions" and "*severe* obesity (body mass index [BMI] of 40 or higher)." (*People Who Are at Higher Risk for Severe Illness*) (emphasis added).

Further, although the parties admit that Petitioner requested two adjournments, there is no evidence or any allegation that Petitioner acted in bad faith throughout her underlying immigration proceedings. *See, e.g.*, *Amadu K.*, 2020 WL 1864583, at *4. Significantly, the Court places great weight on the fact that, given the BIA's recent remand to the immigration court for additional factfinding, Petitioner's removal proceedings are likely to continue beyond June 21, 2020—the one-year mark of Petitioner's detention. (*See* Notice to Appear; Mov. Br. at 39; Reply Br. at 3 n.1); *see also Saquib K.*, 2020 WL 2111028, at *3 (granting a bond hearing where petitioner's removal proceedings were likely to "continue for several more months before a final order of removal or order granting relief from removal is entered"). Moreover, because the COVID-19 pandemic has resulted in immigration court closures and delays in proceedings across the country, it is inevitable that Petitioner's removal proceedings will be delayed further. *See Cristian A.R. v. Decker*, No. 20-3600, 2020 WL 2092616, at *2 (D.N.J. Apr. 12, 2020). For example, in *Christian A.R.*, the Court noted that:

> Immigration courts have closed intermittently across the country. On March 27, 2020, soon after experiencing a one-day closure due to a confirmed COVID-19 case, the Varick Immigration Court in New York moved all of its cases to an adjudication center in Fort Worth, Texas, which were scheduled to be brought before immigration judges ("IJs") in remote hearings. *See* Status Report, *Jovel v. Decker*, 20-cv-308 (S.D.N.Y. Apr. 3, 2020) (the "*Jovel*

---

positive, 38 have recovered. (Edwards Decl. ¶¶ 22–23).

> Status Report") at 2, Haas Decl., Ex. 3, ECF No. 22.6. Since transitioning remotely to Fort Worth, New York-area attorneys have reported administrative and operational setbacks, including IJs not receiving evidentiary submissions or having case files, attorneys being unable to secure clients' appearances due to detention facility "lockdowns," and unexpected hearing cancellations. *See, e.g.*, *Jovel* Status Report at 2-4; Status Update, *Aguilar Garcia v. Decker*, 20-cv-1689 (D.N.J. Apr. 7, 2020) at 1, Haas Decl., Ex. 4.

*Id.* And, in the event Petitioner is unsuccessful in her remand to the immigration court, she will likely appeal to the BIA, and potentially to the Second Circuit, which will further extend the length of Petitioner's removal proceedings. (*See* Pet. ¶ 50).

Thus, given the unique procedural posture of Petitioner's immigration proceedings, coupled with inevitable immigration court delays and Petitioner's underlying health conditions in the shadow of the COVID-19 pandemic, the Court finds that Petitioner's detention has become unreasonably prolonged such that due process requires that Petitioner be afforded an individualized bond hearing before an immigration judge. *See K.A.*, 2018 WL 3742631, at *4; *Leslie*, 678 at 271 ("[t]o conclude that Leslie's voluntary pursuit of such challenges renders the corresponding increase in time of detention reasonable, would effectively punish Leslie for pursuing applicable legal remedies . . ."). The bond hearing shall be conducted within seven days and pursuant to the procedures and standards outlined in *Diop*. *See Borbot*, 906 F.3d at 279 (noting that *Diop* places the burden of proof on the Government in § 1226(c) cases). Furthermore, the Court declines to specifically require that the Government meet its burden by clear and convincing evidence. Petitioner has pointed to no binding authority determining the standard to be used, including *Guerrero-Sanchez*, which only addressed a bond hearing when an individual is detained pursuant to § 1231. As stated by the court in *K.A.* when considering this question on reconsideration, "[t]he Third Circuit has not yet required the clear and convincing evidence standard for bond hearings ordered for those held under § 1226(c). . . . At the time Petitioner was

granted a bond hearing, that standard was not required, and it has not been required through to the present day for § 1226(c) detainees." *K.A.*, 2018 WL 6003541, at *2.

Because the Court finds that Petitioner is entitled to a bond hearing, which may moot the substantive due process challenges of the pending Petition and Motion, the Court will reserve a determination on these remaining claims until after the bond hearing occurs. To be clear, the Court will not engage in a review of the Immigration Judge's determination.

### V.  Conclusion

For the reasons discussed above, Petitioner's habeas corpus Petition and Motion are GRANTED-IN-PART with respect to Petitioner's request for an individualized bond hearing, and the Court will reserve on Petitioner's request for immediate release or a temporary restraining order requiring the same. An appropriate order follows.

*s/Esther Salas*  
**Esther Salas, U.S.D.J.**
